IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KERRY C. SMITH, #2088227,  §
    Petitioner,  §
        §
v.  §  No. 3:20-cv-2947-G (BT)
        §
DIRECTOR, TDCJ-CID,  §
    Respondent.  §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

  Kerry C. Smith, a Texas prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge for findings and a recommendation, pursuant to 28 U.S.C. 636(b) and a standing order of reference. For the following reasons, the Court should DENY Smith's petition.

## Background

  A Dallas County jury found Smith guilty of continuous sexual abuse of a child under 14, in violation of Texas Penal Code section 21.02, and sentenced him to twenty-five years' imprisonment. *See The State of Texas v. Kery C. Smith*, F-1439292. The Fifth Court of Appeals of Texas affirmed Smith's conviction and sentence. *See Smith v. State*, No. 05-16-01069-CR, slip op. (Tex. App.—Dallas 2018, pet ref'd). The Texas Court of Criminal Appeal (CCA) refused Smith's petition for discretionary review (PDR). *See Smith v. State*, PD-0306-19 (Tex. Crim. App. 2019). Smith filed a state application for a writ of habeas corpus, which

the CCA denied without a written order. *See Ex parte Smith*, WR-89,466-03, (Tex. Crim. App. Feb. 12, 2020); ECF No. 12-37.

Smith then filed a federal habeas application pursuant to 28 U.S.C. § 2254 in this Court, in which he argues that:

(1)    His conviction was based on a "false affidavit" and "wrong information." Specifically, the victim testified to a different timeline of abuse than alleged in the indictment; Smith was out of state at the time of the offense; Smith was charged under the wrong penal code provision; the victim was 14 at the time of her outcry (making the section of the penal code pursuant to which he was convicted inapplicable); there was no DNA evidence against Smith; and a doctor "stated that plaintiff was still a virgin with no infections."

(2)    His due process rights were violated because jurors other than the foreperson signed the verdict form in violation of Texas law.

(3)    The verdict was not unanimous because both the foreperson and another juror signed the verdict form and because the jury sent a note to the trial judge asking what would happen if it was unable to reach a unanimous verdict.

(4)    The trial judge erred by first marking granted and then overruled in relation to Smith's motion for a new trial and then failing to immediately file that denial with the Clerk of Court so that Smith could file an appeal before sentencing.

(5)    The prosecutor engaged in misconduct by:

a.    Coercing a witness (the victim's sister) to tell the truth;

b.    Stating that she (the prosecutor) gave the defense all the information she had;

c.    Stating that Smith had a monster inside of him;

d.    Stating that the victim's sister was also a victim;

e.    Telling the jury that they should pay attention during the trial;

> f. Eliciting evidence from the victim's sister that Smith touched the sister inappropriately; and
>
> g. Presenting a surprise witness.
>
> (6) The trial judge erred in admitting testimony from the victim's sister that Smith also touched the sister inappropriately.[1]

ECF No. 5 at 6-7, 12-23; *see also* ECF No. 8 (memorandum in support of application). The State filed a response. ECF No. 13. Smith filed a reply. ECF No. 15.

## Legal Standards and Analysis

A. <u>Smith's first ground for relief is unexhausted and procedurally defaulted.</u>

To obtain federal habeas relief, a petitioner must first fully exhaust state remedies. *See* 28 U.S.C. § 2254(b); *Johnson v. Cain*, 713 F.3d 227, 231 (5th Cir. 2013). "To comply with the exhaustion requirement, a petitioner must 'fairly present his legal claim to the highest state court in a procedurally proper manner.'" *Arteaga v. Lumpkin*, 2022 WL 3702263, at *2 (S.D. Tex. Aug. 25, 2022) (citing *Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015)). The federal claim "must be the substantial equivalent of the claim brought before the State court." *Young v. Davis*, 835 F.3d 520, 525 (5th Cir. 2016) (cleaned up). "The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual

---

[1] Smith's sixth ground for relief, titled "inadmissible evidence," rehashes the arguments for prosecutorial misconduct in his fifth ground for relief. ECF No. 5 at 22. The only separate allegation appears to be that the trial judge erred in admitting testimony from the victim's sister that Smith also touched her inappropriately. *See* ECF No. 5 at 22-22.

claims in his federal habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir. 1983)).

Thus, "to exhaust a claim in Texas, a petitioner must present the claim in a procedurally proper manner to the state's highest court of criminal jurisdiction—[the CCA]—by taking one of these paths: (1) the petitioner may file a direct appeal followed, if necessary, by a petition for discretionary review in the [CCA]; or (2) he may petition for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the [CCA] once the trial court determines whether findings are necessary." *Arteaga*, 2022 WL 3702263, at *3 (citing TEX. CODE CRIM. PROC. art. 11.07 § 3); (*Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004)) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

In his first ground for federal habeas relief—titled "False Affidavit/Wrong Information"—Smith challenges the sufficiency of the evidence used to convict him of continual sexual abuse of a minor under the age of 14 as alleged in the indictment. Specifically, Smith contends: (1) the victim testified that the first offense occurred in 2013 but the indictment alleged it happened on 8/1/2010; (2) Smith was out of state at the time of the offense; (3) Smith was convicted under the wrong penal code provision because the victim was 14 at the time of her outcry; and (4) the State never proved Smith committed the crime, especially because

there was no DNA evidence and a doctor testified that the victim was still a virgin with no infections. ECF No. 5 at 6.

But Smith never presented this ground for relief to the CCA in either a PDR or state habeas application. Smith did raise a sufficiency-of-the-evidence claim on direct appeal, which was similar (but not identical) to the claim he presents in his federal application. (Compare ECF No. 5 at 8 with ECF No. 12-14 at 46-51.) Nevertheless, Smith did not pursue this sufficiency-of-the-evidence claim in a PDR, so it was not exhausted on direct review. *See* ECF No. 12-16 (PDR).

Smith also filed a state habeas application that contained a claim titled "double jeopardy," which made some of the points that he raises in connection with his first federal ground for relief, namely, that there was no proof that the offense happened and there was some evidence tending to show that there was no abuse. *See* ECF No. 12-38 at 14-15.

But the "double jeopardy" claim in the state application was based on a legal theory that Smith is not presenting in his federal application: that Smith was arrested and convicted twice for the same crime. *See* ECF No. 12-38 at 14. So, even though some of the factual content supporting that double jeopardy claim is the same as what he uses to support his first ground for relief in his federal application, the CCA was not presented with the claim that Smith makes here—which sounds in insufficiency-of-the-evidence—and the claim is therefore unexhausted. *See, e.g.*, *Nobles*, 127 F.3d at 420; *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003) ("It is not enough that the facts applicable to the federal claims were all before the State

court, or that the petitioner made a similar state-law based claim. The federal claim must be the 'substantial equivalent' of the claim brought before the State court."); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) ("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in state court, he fails to satisfy the exhaustion requirement").[2]

Related to exhaustion is the concept of procedural default. "[I]f the prisoner fails to exhaust available state remedies, and the state court to which the prisoner would have to present his claims in order to exhaust them would find the claims procedurally barred, the prisoner has defaulted those claims." *Coleman v. Dretke*, 395 F.2d 216, 220 (5th Cir. 2004) (citing *Nobles*, 127 F.3d at 420). Texas state law "prohibits Texas courts from considering the merits of, or granting relief based on, a subsequent writ application filed after the final disposition of the inmate's first application unless he demonstrates cause or actual innocence." *Sefiane v. Director*, TDCJ-CID, 2022 WL 3999851, at *6 (E.D. Tex. July 18, 2022), *rec. accepted* 2022 WL 3974998 (E.D. Tex. Aug. 31, 2022) (citing Tex. Code Crim. Proc. art. 11.07 § 4); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("[T]he Texas abuse of the writ doctrine prohibits a second habeas petition absent a

---

[2] Smith admits that he did not exhaust the first ground for relief in his federal application. In response to a question in the federal habeas application as to whether any of his claims were presented for the first time in it, he responded "yes," and indicated that, "[t]he ground was previously listed under Double Jeopardy after it was denied I saw the title double jeopardy was wrong, so I researched it and found the indictment  to be wrong and misleading the ground should be False Affidavit/Wrong Information." ECF No. 5 at 8.

showing of cause, if the petitioner urges grounds therein that could have been, but were not, raised in the first habeas petition.").

Here, Smith failed to present his first ground for relief to the CCA in his original writ application. And because Texas's abuse of the writ doctrine would preclude him from doing so now through a subsequent application, the claim is defaulted.

When a petitioner procedurally defaults his federal claims by failing to follow applicable state procedural rules, the claims should be denied unless the petitioner demonstrates cause for the default and actual prejudice because of the alleged error, or that a miscarriage of justice will occur if the federal courts do not consider the claim. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Nelson v. Davis*, 952 F.3d 651, 662 (5th Cir. 2020). To show cause for the default, the petitioner "must establish that some objective factor external to the defense impeded his efforts to comply with the state procedural rule." *Sefiane*, 2022 WL 3999851, at *6 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996)). To show prejudice, the petitioner must show that the error "worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). "And a miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted." *Id.* (citation omitted). To show actual innocence in this context, the petitioner must support his allegations with "new, reliable evidence" that was not presented at trial and must show that it was more likely than not that, in light of the new evidence,

no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).

Smith has not shown cause for his default. At most, liberally construing his filings, he argues that he was unaware that double jeopardy was the incorrect theory for his claim because of his lack of legal training and knowledge and that he only discovered the correct legal theory after additional research. *See* ECF No. 5 at 8. But a prisoner's *pro se* status and lack of legal training and experience is not cause to excuse a procedural default. *See*, *e.g.*, *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("Second, Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default.") (citation omitted); *Corman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992) (that "petitioner may possess below-average intelligence, have no formal legal training, or have filed the initial habeas petition pro se" is not enough to excuse procedural default); *see also Murphy-Richardson v. Maricopa County Superior Court*, 2021 WL 5890011, at *12 (D. Ariz. Nov. 17, 2021), *rec. accepted* 2021 WL 5882727 (D. Ariz. Dec. 13, 2021) ("A petitioner's status as an inmate, lack of legal or technical knowledge, lack of education, and limited resources do not establish cause to excuse the procedural default.") (citation omitted). And because Smith fails to show cause, the Court need not consider whether he was prejudiced. *See Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982). Finally, Smith has not shown that the miscarriage of justice exception should apply.

In sum, Smith procedurally defaulted his first ground for relief and it should be denied accordingly.

B. Smith's Remaining Claims Lack Merit.

Smith exhausted his remaining claims, and the CCA denied them on the merits. Therefore, this Court reviews those claims pursuant to 28 U.S.C. § 2254(d), which provides:

> (d)    An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). Absent express factual findings, a federal court may imply fact findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983).

And while the deference afforded by Section 2254(d) "does not require that there be an opinion from the state court explaining the state court's reasoning[,]" *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (citations omitted), when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[] the specific reasons given by the state court and defer[] to those reasons if they are reasonable." *Wilson v. Sellers*, ---U.S.---, 138 S. Ct. 1188, 1191-92, 200 L.Ed.2d 530 (2018). If the opinion "does not come accompanied with those reasons," a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.* But, when no state court decision is accompanied by explanation, the habeas petitioner must show there was "no reasonable basis for the state court to deny relief." *Harrington*, 526 U.S. at 98.

1. Smith fails to show a constitutional violation relating to the verdict form.

In his second claim for relief, Smith contends that his Fifth and Fourteenth Amendment rights were violated because the verdict form did not comply with "Texas Jury Instructions." ECF No. 5 at 6. Smith specifically complains that 3 jurors, including the foreperson, signed the form. *See* ECF No. 5 at 6; *see also* ECF No.12-36 at 158 (verdict form).[3]

This claim lacks merit and the CCA did not err in rejecting it. To the extent Smith complains that the verdict form violates Texas law, this—standing alone—does not furnish a basis for federal habeas relief. *See*, *e.g.*, *Moore v. Quarterman, 526 F.Supp.2d 654, 686 (W.D. Tex. Dec. 20, 2007)* ("Federal habeas corpus will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented.") (citing *Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)*; (*Lewis v. Jeffers, 497 U.S. 764, 780 (1990)*; (*Pulley v. Harris, 465 U.S. 37, 41 (1984)*)). And to the extent Smith argues that an error of state law violated his federal due process rights, "the trial court's error is subject at best to harmless-error analysis on direct review." *Gonzalez v. Thaler, 468 F. App'x 404, 406 (5th Cir. 2012)* (rejecting state habeas petitioner's claim that his verdict form failed to comply with Texas procedural law and that this violated his federal due process rights because the petitioner failed to show prejudice). Smith does not

---

[3]While Smith claims that three jurors signed the verdict form, this is inaccurate. Only the foreperson and another juror signed the verdict form. *See* ECF No. 12-36 at 158.

explain how another juror signing the verdict form in addition to the foreperson had any impact on the outcome of the criminal proceedings. Because Smith fails to establish that any violation of state law regarding the verdict form also amounts to a violation of due process warranting habeas relief, he fails to show that the CCA's rejection of this claim was clearly contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

2.  Smith's jury verdict was unanimous.

In his third ground for relief, Smith claims that his jury verdict was not unanimous because jurors besides the foreperson signed the verdict form and because during their deliberations the jury asked the trial court what would happen if they were unable to come to a unanimous decision after numerous votes and thorough review of the facts. *See* ECF No. 5 at 7. The note from the jury specifically asked: "If we cannot come to a unanimous decision (after several votes) and thorough review of all the facts—what happens next?" ECF No. 12-17 at 136. The trial court responded: "In answer to the above note, you have received all of the law and evidence that you are entitled to receive in this case, and you are instructed to continue with your deliberations."

The Sixth Amendment's right to a jury trial requires a unanimous verdict to support a felony conviction in both federal and state courts. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). And, here, the record is clear that the verdict was unanimous. According to the transcript, the verdict form stated: "We,

the jury, unanimously find the defendant, Kerry C. Smith guilty of continuous sexual abuse of a young child as charged in the indictment." *See* ECF No. 12-29 at 5. Further, the jury was polled, confirming the unanimity:

> The Court: All right. If each of you agrees with this verdict and this is indeed your verdict, please raise your right hands. All jurors have hands raised. Let the record reflect all jurors have raised their hands.

ECF No. 12-29 at 6. That the verdict form was also signed by another juror in addition to the foreman, and that it took the jury multiple votes to reach a unanimous verdict, does not alter the fact that the jury ultimately rendered a unanimous verdict.

Smith also argues as part of this claim that the trial court "did not proofread the verdict/form to prevent possible misunderstandings, mistakes or any appellate issues with the judgment or sentence rendered and mainly to see if the verdict sheet/form was filled out by the foreman of the jury and to see if there were any defects that could be addressed at that time on the errors noted by the judge." ECF No. 5 at 18. Smith, however, fails to identify any mistakes or misunderstandings that would call the validity of the verdict into question, so he has not shown any prejudice from the trial judge not "proofreading" the verdict form necessary to establish a due process violation.

Thus, the record is clear that the jury verdict was unanimous, and Smith fails to identify any problem with the verdict form that had an impact on the outcome of the proceedings. The CCA's rejection of this claim was not contrary to nor was it

an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

> 3. Smith's judicial error claims lack merit.

Smith's fourth and sixth grounds for habeas relief center on alleged error by the trial judge. In his fourth ground for relief, Smith complains that the trial judge erred by first marking his motion for a new trial granted before checking "overruled" and then erred again by not immediately filing the denial with the Clerk's office so that Smith could file an interlocutory appeal before being sentenced. ECF No. 5 at 7, 20. In his sixth ground for relief, Smith contends that the trial judge erred in allowing testimony from the victim's sister that Smith inappropriately touched her. ECF No. 5 at 22-23.

Regarding claims for habeas relief based on judicial error, relief is only warranted if "the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Bailey v. Procunier,* 744 F.2d 1166, 1168 (5th Cir. 1984) (citing *Banks v. McGougan,* 717 F.2d 186, 190 (5th Cir. 1983); *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir. 1983)). "The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Kirkpatrick v. Blackburn,* 777 F.2d 272, 278-79 (5th Cir. 1985). Further, pursuant to *Brecht v. Abrahamson,* 507 U.S. 619 (1993), as construed by the Fifth Circuit, "a constitutional error is not so harmful as to entitle a defendant to habeas relief unless there is *more* than a mere reasonable possibility

that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Corwin v. Johnson*, 150 F.3d 467, 500 (5th Cir. 1998) (emphasis in original).

As to the fourth ground for relief, Smith fails to show how it was error—much less error of a constitutional dimension—for the trial court to first mark that the motion for a new trial was granted before changing the ruling to denied. Smith certainly does not point to any case in which a court found error or misconduct based on a judge reversing course or correcting an error in relation to a motion. To the extent Smith contends that he was harmed because he was not able to file a pre-sentencing appeal because the trial judge did not immediately file the order denying the motion for a new trial, his claim is without merit. Under Texas law, a criminal defendant may not directly appeal from the denial of a motion for a new trial independent of an appeal from the underlying conviction. *See Torres v. State*, No. 12-22-00004-CR, 2022 WL 399140, at *1 (Tex. App.—Tyler Feb. 9, 2022), no pet.) (per curiam) ("An order denying a motion for a new trial is not a separately appealable order.") (collecting cases); *Gipson v. State*, 2018 WL 2305532, at *1 (Tex. App.—Houston [1st Dist.] May 22, 2018, no pet.) (per curiam). Thus, Smith had no right to an independent appeal of the denial of his motion for a new trial, and the logical predicate for this aspect of the claim is flawed.

In sum, the CCA's rejection of Smith's fourth claim for relief was not unreasonable because Smith fails to show that the trial court erred in initially marking the motion for a mistrial granted or by not immediately filing the order

denying the motion with the Clerk of Court so that Smith could try to file an interlocutory appeal.

As for Smith's sixth claim—that the trial court erred in admitting testimony from the victim's sister that Smith also touched her inappropriately—the following testimony is at issue:

> I just remember [the victim] telling my mom that she had something—she was telling her—she was, like, do you remember, you know, she said, Do you remember when I told you I had something to tell you? And my mother was like, Yeah, I remember.
>
> And then, that's when she was like, she was like daddy's been touching me in ways that he's not supposed to, and my mom was like, what do you mean, and she was just like, in a way that you just don't touch your daughter or something like that, and then I saw her looking back.
>
> I remember my mom, she was—she looked at me. She was like, she was—she said a comment about me, looking back, and being in the conversation, and she was like, oh, what did it happen to you too, and I nodded yes.

ECF No. 12-25 at 105.

Initially, if Smith is claiming that the trial court erred in *admitting* this testimony from the victim's sister, the claim is meritless because the trial court did not allow this testimony and instead instructed the jury to ignore it:[4]

---

[4] No state court issued a written opinion or explanation as to any of the non-defaulted federal claims that Smith presents here. The Fifth Court of Appeals for Texas did consider whether the trial court should have granted the motion for a mistrial in relation to the sister's testimony, but its analysis was confined to whether the denial of the motion was an abuse of discretion. *See* ECF No. 12-1 at 10-11. Therefore, that court does not appear to have considered the federal constitutional question presented here, and this Court's § 2254(d) analysis should ask whether there was any "reasonable basis for the [CCA] to deny relief." *Harrington*, 526 U.S. at 98. But even if this Court's § 2254(d) deference was

> Ladies and Gentlemen of the jury, I'm going to ask that you disregard the last question and the last answer that you heard from [the victim's sister]. I'm also gonna instruct you that if there's any testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider that testimony for any purpose, unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then, you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident of the Defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose.

ECF No. 12-25 at 108-09.

If Smith is claiming that the trial court erred in not granting a motion for a mistrial in relation to this testimony, the CCA could have reasonably determined the claim is meritless because the testimony did not—especially given the limiting instruction and other evidence against Smith—substantially influence the verdict. *Corwin*, 150 F.3d at 500. Indeed, as the Fifth Court of Appeals established in rejecting Smith's sufficiency-of-the-evidence claim, there was ample evidence to support the conviction aside from the sister's testimony:

> The jury heard testimony of multiple acts of sexual abuse committed by Smith against [the victim] when she was younger than fourteen and that occurred over a period of more than thirty days. Smith was older than seventeen when these acts were committed. A jury could rationally conclude from all of the evidence, including Smith's heavy

---

limited to the Fifth Court of Appeals' reasons for the denying the failure-to-grant-a-mistrial claim, the result would be the same. That court, in rejecting the claim, also focused on curative measures, lack of misconduct on the part of the prosecution, and the other ample evidence against Smith. *See* ECF No. 12-1 at 11-13. Smith fails to show how its decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

breathing during the touching and evidence of ejaculation, that the touching was committed with the intent to arouse or gratify Smith's sexual desire. A jury could also rationally conclude from the evidence that Smith intentionally or knowingly caused the penetration of [the victim's] anus or sexual organ by any means, caused her sexual organ or anus to contact Smith's sexual organ, and that [the victim] was younger than fourteen years of age at the time.

Smith contends that [the victim's] testimony was inconsistent and she explained details at trial she did not give to [the forensic investigator or examining doctor]. He argues it would have been impossible for the number of incidents of abuse to occur in a house with twelve people without someone becoming aware of what was happening. Smith disputes that any abuse occurred in a camper in Arkansas based on evidence the family never took the camper to Arkansas and [the victim] slept in her uncle's trailer with his daughter. Smith denied abusing [the victim] the Thursday or Friday before her outcry because he was in Arkansas for a funeral at the time. He maintained that [the victim] was depressed because she broke up with her boyfriend and was taking three different psychotropic medications.

The jury heard evidence from Gonzalez that children in sexual abuse cases go through different stages of disclosure of what happened to them. Some children go through all stages, but some stay in a stage forever. Disclosure is a process, not a one-time event. Children will continue to process and may describe more incidents in later interviews. Where the abuse is chronic, the child may not remember "all the peripheral details." Gonzales explained that in her experience, children describe abuse that occurred in a crowded house or while another person was sitting next to the child or in bed with the child. Smith also testified that he was able to have sex with his wife, [], while living in the crowded house.

Although there is conflicting evidence in the record, it was for the jury to resolve those conflicts, weigh the evidence, and draw reasonable inferences from the facts.

ECF No. 12-1 at 7-8.

In all, Smith has failed to show that the CCA's rejection of his judicial-error-based claims was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

### 4. Smith's prosecutorial misconduct claims lacks merit.

In his fifth ground for relief, Smith claims that the prosecutor engaged in misconduct by: (1) coercing a witness—the victim's sister—into telling the truth; (2) stating that she gave the defense all the information she had; (3) belittling and defaming Smith by telling the jury that he had a monster inside of him; (4) stating during closing argument on punishment that both the victim and her sister were victims when the victim's sister was not a complainant; (5) telling the jury that they "will not see any evidence, so focus and pay attention," which, according to Smith, inflamed the jury with prejudice; (6) eliciting undisclosed testimony from the victim's sister that Smith sexually abused her; and (7) presenting a "surprise" witness, Tazmia Petties. See ECF No. 5 at 21-22.

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). "The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions 'prejudiced the defendant's substantive rights.'" *Pineda v. Thaler*, 2011 WL 1877640, at *5 (N.D. Tex. Mar. 24, 2011) (citing *Duffaut*, 314 F.3d at 210).

If it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected a trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 1974)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy*, 959 F.2d at 1317 (5th Cir. 1992) (internal quotation marks omitted). Regarding improper prosecutorial remarks in particular, courts look to the following factors to gauge whether the defendant has shown prejudice: "(1) the magnitude of the prejudicial effect on the prosecutor's remarks, (2) the efficacy of any cautionary instruction provided by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1993)

Smith does not explain how it was improper for the prosecutor to encourage a witness to tell the truth, state that she gave all discovery materials to the defense, or tell the jury to pay attention to the evidence. To the extent Smith's prosecutorial misconduct claim is premised upon those actions, it is meritless.

As for the claim that the prosecutor improperly argued that Smith had a "monster inside of him," proper jury argument includes four areas: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to

opposing counsel's argument; and (4) pleas for law enforcement. *Borjan v. State,* 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). Further, the prosecutor's use of harsh descriptions of a criminal defendant is not misconduct if they are supported by evidence. *See, e.g.*, *United States v. Cook*, 432 F.2d 1093, 1106-07 (5th Cir. 1970) (finding that it was not improper for the prosecution, during closing argument, to characterize the defendant as a "sub-human man" with a "rancid, rotten mind," a "true monster' when the evidence showed the defendant engaged in a plot to kill his wife by activating a bomb on a crowded airplane).

Given the evidence that Smith sexually abused the victim for years, the CCA could have reasonably concluded that evidence supported the prosecution's comment that Smith had a monster inside, so there was no misconduct. Even if the remark was improper, the CCA could have reasonably concluded that it did not—given all the evidence against Smith—create a reasonable probability that the sentence might have been different without the misconduct. *See, e.g.*, *Rosales v. Dir.*, TDCJ-CID, 2021 WL 2006481, at *9 (E.D. Tex. Feb. 10, 2021), *rec. accepted* 2021 WL 1998781 (E.D. Tex. May 19, 2021) (calling the defendant a "monster" did not deprive him of a fair trial); *Bible v. Stephens*, 2014 WL 5500722, at *30 (S.D. Tex. Oct. 30, 2014) (telling the jurors that the defendant was "evil" and "deserved to die" did not deprive the defendant of a fair trial). In fact, Smith received 25 years—the lowest possible sentence for crime of which he was convicted according to the trial court's charge. *See* ECF No. 12-29 at 151 (court's charge indicating a punishment range of life or a term not more than 99 years or less than 25 years).

Next, Smith complains that the prosecutor argued during the closing argument of the sentencing phase that both the victim and her sister were victims of Smith's conduct. *See* ECF No. 12-29 at 160. Even assuming that this was improper, Smith has not shown prejudice because he has not shown that but-for these remarks, he would have received a more lenient sentence when he already received the lightest possible sentence. *See United States v. Ebron*, 683 F.3d 105, 147-48 (5th Cir. 2012) (denying a prosecutorial misconduct claim based on supposedly improper remarks during the closing argument of the sentencing phase because there was not a "reasonable probability that the result of Ebron's sentencing proceeding would have been different but for the government's use of the challenged phrase").

Next, Smith claims that the prosecutor elicited highly inflammatory and prejudicial evidence from the victim's sister that Smith also touched her inappropriately—testimony that the prosecutor did not tell the defense it would use and which was unknown to the defense. But the CCA could have reasonably concluded that there was no prosecutorial misconduct related to the victim's sister's testimony. After the victim's sister offered the testimony in question, which drew an objection, the prosecutor told the trial court that the victim's sister was specifically instructed not to offer any testimony about Smith abusing her, so the prosecutor also was surprised by the testimony and did not purposefully elicit it. ECF No. 12-25 at 107. And, at any rate, Smith fails to show that this testimony was especially important to his conviction such that there was a reasonably probability

he would not have been convicted without it—especially given the limited instruction and instruction from the trial court to disregard the testimony.

And finally, as for Smith's claim that the prosecutor engaged in misconduct by presenting testimony from a surprise witness, Tazmia Petties, this occurred at sentencing. ECF No. 12-29 at 53. And, as noted, the jury assessed the lowest punishment available for the offense. Thus, Smith fails to show any prejudice from Petties testifying.

For all these reasons, the CCA's rejection of Smith's fifth ground for relief claim was not an unreasonable application of clearly established federal law, nor was it contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

## Recommendation

For the foregoing reasons, the Court should DENY Smith's § 2254 petition.

Signed October 28, 2022.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)